**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MARSHALL,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 10-169Erie** |
| | ) | |
| **v.** | ) | **District Judge Maurice Cohill** |
| | ) | |
| **RAYMOND SOBINA, et al,** | ) | **Magistrate Judge Susan Paradise Baxter** |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that the partial motion to dismiss filed by the Commonwealth Defendants [ECF No. 24] be granted in part and denied in part.  More specifically, the motion to dismiss should be granted:  1) as to the claims against Defendants Robertson and Overton; 2) granted as to the deliberate indifference claims against Defendant Sobina; 3) denied as to the claims against Defendants Lucas, McConnell, and Breckenridge; and 4) denied as to the retaliation claims against Defendant Sobina.  The Clerk of Courts should be directed to terminate Defendants Robertson and Overton from this action.

It is further recommended that the motion to dismiss filed by Defendants Baker, Telega, Gilreath and Mowry [ECF No. 32] be denied.

**II.      REPORT**

**A.  Relevant Procedural History**

1

Plaintiff, a state inmate currently incarcerated at the State Correctional Institution at Albion, initiated this civil rights action on July 13, 2010.   Plaintiff, acting *pro se*, alleges that Defendants violated his constitutional rights under the Eighth Amendment in numerous ways. Plaintiff claims he was assaulted by Defendant Hewitt, a guard, received inadequate medical care following the assault, and he was retaliated against by the Commonwealth Defendants[1] after he filed grievances.  ECF No. 4.  As Defendants to this action, Plaintiff names the following: Raymond Sobina, Superintendent; Maxine Overton, Health Care Administrator; Lieutenant William McConnell; Lt. Robertson; Col. Hewitt; Scott Breckenridge, an employee of the Food Service Department; and Ralph Lucas, an RN, all of the Department of Corrections of the Commonwealth (hereinafter referred to as the "Commonwealth Defendants"); and Daniel Telega; Tammy Mowry; Dr. Mark Baker; and Dr. Valerie Gilrealth, all of Prison Health Services, Inc. (hereinafter referred to as the "PHS Defendants").  These two groups of Defendants are represented separately.

In response to the Complaint, the Commonwealth Defendants Robertson, Lucas, McConnell, Breckenridge, Sobina, and Overton filed a partial motion to dismiss arguing that Plaintiff has failed to adequately allege personal involvement by Defendants Robertson, Lucas, McConnell, Breckenridge, Sobina, and Overton[2].  ECF No. 24.  Defendant Hewitt filed an Answer to the Complaint and does not join in the motion to dismiss.   Plaintiff filed a brief in opposition to the Commonwealth Defendants' partial motion to dismiss.  ECF No. 27.

---

[1]  This Court does not read the complaint as alleging any claim of retaliation against the PHS Defendants.

[2]  Defendants also move to dismiss a due process claim and a Fourth Amendment claim. However, this Court does not read Plaintiff's complaint as attempting to set forth either a due process or Fourth Amendment claim.  Instead, this Court reads Plaintiff's allegations of false misconducts and cell searches as instances of the alleged pattern of retaliation.

The PHS Defendants filed a motion to dismiss arguing for dismissal based in part upon Plaintiff's failure to state a claim of deliberate indifference.  ECF No. 33.  Plaintiff filed a brief in opposition.  ECF No. 39.

These issues are fully briefed and are ripe for disposition by this Court.

### B.  Standards of Review

#### 1)  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

#### 2)  Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This

'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the

necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit subsequently expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual
> matter' to show that the claim is facially plausible. This then 'allows the court
> to draw the reasonable inference that the defendant is liable for the alleged
> misconduct.'
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a
> claim, district courts should conduct a two-part analysis. **First, the factual
> and legal elements of a claim should be separated. The district court
> must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a district court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a 'plausible claim for relief.' In other words, a
> complaint must do more than allege the plaintiff's entitlement to relief.** A
> complaint has to 'show' such an entitlement with its facts. As the Supreme
> Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct, the complaint has
> alleged - but it has not shown - that the pleader is entitled to relief.' This
> 'plausibility' requirement will be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (emphasis added) (internal

citations omitted).

Plaintiff has attached several exhibits to his pleadings. However, the use of these exhibits

by this Court does not convert Defendants' motions to dismiss for failure to state a claim into

motions for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d

548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as

exhibits attached to the complaint and facts of which the court will take judicial notice, will not

trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an

Federal Rule of Civil Procedure 56 motion for summary judgment.").

### C.  Plaintiff's General Factual Allegations

#### 1)  Allegations against the Commonwealth Defendants

Plaintiff alleges that around January 28, 2010, he and Defendant Hewitt became

involved in a verbal and physical confrontation that resulted in injuries to Plaintiff.  ECF No. 4,

Complaint, ¶¶ 21-29.  Plaintiff alleges that Defendant Robertson failed to intervene following

the physical encounter.  Id. at ¶¶ 29-31.

Thereafter, Plaintiff alleges that Defendant Lucas, an RN, denied him emergency

admission to the Medical Department until  Plaintiff wrote up a sick call slip requesting medical

attention.  Id. at ¶¶ 32-34.  Plaintiff alleges that Officers Mitchell and Purcell (not named as

defendants to this action) then overruled Defendant Lucas and sent Plaintiff to the Medical

Department for emergency treatment.  Id. at ¶ 33.

Plaintiff alleges that once he arrived at the Medical Department, he was seen by

Defendant Lucas who only took his vital signs and interrogated him in a hostile manner about the

cause of his injuries.  Id. at ¶ 34.  Defendant Lucas did not physically examine Plaintiff and

Plaintiff alleges that Defendant Lucas deliberately advised Defendant Telega, the physicians'

assistant who conducted the physical examination, that Plaintiff was alluding to an assault by an

officer and Defendant Lucas attempted to "sabotage and deprive the Plaintiff of treatment to

cover evidence of Defendant Hewitt's assault."  Id.  At the conclusion of the emergency visit on

January 28th, Plaintiff received no pain medication, no ice, no x-rays, or any other "immediate

adequate treatment" to his injuries.  Id. at ¶ 39.

Defendant McConnell allegedly engaged in a campaign of retaliation against Plaintiff beginning after January 29, 2010, when he was assigned as the grievance officer (presumably to investigate the physical encounter between Defendant Hewitt and Plaintiff).  Defendant McConnell allegedly watched Plaintiff on the security camera and directed another officer (not named as a defendant to this action) to fabricate a misconduct report, remove Plaintiff from his kitchen job, and conduct a cell search.  Id. at ¶¶ 42-45.

Plaintiff alleges that Defendant Breckenridge, an employee of the food service department, fabricated a reason for Plaintiff's removal.  Id. at ¶ 52.

Plaintiff alleges that Defendant Sobina, the warden, was responsible for and involved in the inadequate medical treatment as well as the retaliation.

### 2)  Allegations against the PHS Defendants

Plaintiff was examined by Defendant Telega on January 28, 2010, the date of the incident.  According to Plaintiff, Telega treated him "aggressively" and "meanly," and when Plaintiff was physically unable to put his right arm behind his back (due to his broken collar bone), Telega "became angry, and aggressively and vindictively applied pressure to the Plaintiff [sic] collarbone."  ECF No. 4, ¶ 35.  Telega allegedly lost control, cursed at Plaintiff, told him he was faking, and told him to "get the fuck out his office and to get dress [sic] in the hallway."  Id. at ¶ 36.  At this visit, Plaintiff received no pain mediation, no ice for swelling, and no x-ray. According to Plaintiff, Defendants Telega and Lucas denied any injury existed.  Id. at ¶ 38.

Plaintiff was seen by Defendant Mowry on February 1, 2010, after he submitted a sick call slip requesting medical attention.  Id. at ¶ 39.  Mowry then refused to provide Plaintiff with any medical treatment telling him that she would not second guess another physician assistant.

Id. Plaintiff showed his swollen collarbone to Mowry and he was asked to leave her office. Plaintiff requested photos be taken on his injuries and an officer photographed Plaintiff.  Id. at ¶ 40.  Plaintiff renewed his request for pain medication and Mowry charged Plaintiff for ten days of pain medication, but he received none for several days.  Plaintiff alleges that Mowry performed no physical examination.  Id.

On February 5, 2010, an x-ray was taken of Plaintiff's right shoulder.  Id. at ¶ 48. On February 11, 2010, Plaintiff was seen by Defendant Mowry for his "chronic pain from his chest and shoulder that his collarbone protruding out his chest."  Id. at ¶ 49.  Defendant Mowry refused any medical treatment.  When Plaintiff requested that Defendant Mowry perform an exam of the lump on this chest, she became hostile and told him the x-ray indicated there were no injuries. Id. at ¶ 50.

On February 18, 2010, Plaintiff was seen by Defendant Dr. Gilreath who examined the collarbone, found it abnormal, and ordered further x-rays and 30 days of pain medications.  Id. at ¶ 54.  On March 8, 2010, Plaintiff was seen by Defendant Gilreath, who indicated that his x-ray was negative.  Plaintiff requested another medical opinion.  Id. at ¶ 59.  On April 10, 2010, Defendant Gilreath examined Plaintiff who complained of chest and shoulder pain.  Defendant Gilreath found the right clavicle abnormal and ordered a CT scan of the area.  Id. at ¶ 60.

On May 25, 2010, Plaintiff was transported to Meadville Hospital for a CT scan.  Id. at ¶ 63.  On June 10, 2010, Defendant Gilreath informed Plaintiff that the CT scan revealed that his clavicle and sternum were both fractured.  Id. at ¶ 65.  Plaintiff's fractured bones fused together incorrectly causing deformity.  Id. at ¶ 67.

Plaintiff alleges that Defendant Dr. Mark Baker is the medical director and the primary supervising physician and is responsibility for the performance by his physician's assistants.  <u>Id</u>. at ¶ 61.

### D.  The Motion to Dismiss filed by the Commonwealth Defendants

#### *Respondeat Superior*

In their partial motion to dismiss, Commonwealth Defendants Robertson, Lucas, McConnell, Breckenridge, Sobina, and Overton argue that they should all be dismissed from this case because Plaintiff has failed to sufficiently allege their personal involvement.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct.  <u>Ashcroft v. Iqbal</u>, ___ U.S. at ___, 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.");  <u>Oliver v. Beard</u>, 358 Fed.Appx 297, 300 (3d Cir. 2009).  It is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a § 1983 civil rights action.  <u>See</u> <u>Monell v. Dep't of Social Serv.</u>, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to

prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Rizzo v. Goode, 423 U.S. 362 (1976). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) quoting Rode, 845 F.2d at 1207.

### 1) Defendant Robertson

In his Complaint, Plaintiff alleges that Defendant Hewitt forcefully grabbed him and took him to Defendant Robertson almost immediately following the physical altercation. Plaintiff alleges that he reported Hewitt's actions to Defendant Robertson who:

> […] justified Defendant Hewitt action and threaten the Plaintiff he could be put in the hole (restricted housing unit) and told the Plaintiff to go back to his housing unit at which time the Plaintiff told Defendant Robertson he didn't eat. Defendant Robertson told the Plaintiff he don't get to eat.

> Defendant Robertson knew of the Plaintiff rights being violated and was in a position to correct the violation., [sic] and failed to do so as a supervisory officer allowing the incident and resultant harm to Plaintiff. The Plaintiff reported these violation in grievance 306245.

ECF No. 4, ¶¶ 30-31.

These allegations do not rise to the level of personal involvement sufficient to state a claim against Defendant Robertson as Plaintiff only alleges that Defendant Robertson became

personally involved following the assault and then only in his capacity as a supervisory officer.

Therefore, he could not have played any "affirmative part" in the alleged constitutional violation.

Cooper v. Beard, 2006 WL 3208783, at * 14 (E.D. Pa. 2006).

> In his Opposition Brief, Plaintiff further explains that Defendant Robertson:

> > Played an affirmative part in the Plaintiff constitutional rights being violated by allowing it and encourage Hewitt's behavior, he was well aware these actions reported and even witness Hewitt's drag [sic] the Plaintiff to him very aggressively with force yelling at the Plaintiff.  The Plaintiff report to this Defendant he was unlawfully search [sic], shoved into wall and deprived of his meal and hit him in his testicles.  Robertson told the Plaintiff "so what, you do whatever my officers tell you to do and we can put you in the hole too," Robertson told the Plaintiff to go back to his housing unit [sic] the Plaintiff told Robertson he ain't [sic] eat, Robertson told the Plaintiff "you don't get to eat."

ECF No. 27, pages 12-13.  Further, Plaintiff describes his understanding of Robertson's actions:

"Not only did Robertson encourage these violations, he further punish the Plaintiff for

complaining about it by helping Hewitt deprive the Plaintiff of his meal.  Here Robertson['s]

actions as a supervisory officer demonstrate he tolerates past and ongoing abuse of inmates, and

misbehavior.  […] Robertson had knowledge of his subordinate['s] actions, rather fix it, he

facilitate it, approved it, condone it, even turned a blind eye to it."  Id.[3]

---

[3]  Even if proven as true, Plaintiff's allegation that he missed a single meal does not rise to the level of an Eighth Amendment violation.  In order to make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference."  Farmer v. Brennan, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter on more than a single occasion.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Gutridge v. Chesney, 1998 WL 248913, at * 5 (E.D. Pa. 1998) ("the alleged deprivation of a single meal on two separate occasions, over a month part, is not serious enough to rise to the level of a constitutional violation.").

Plaintiff's explanation of his claim against Defendant Robertson only serves to clarify that he seeks to impose liability upon Robertson in his capacity as the supervisor of Defendant Hewitt and only after the physical altercation had occurred.  Accordingly, the motion to dismiss should be granted as to Defendant Robertson as Plaintiff has failed to sufficiently allege his personal involvement in order to state a claim against him.

### 2)  Defendant Overton

In his Complaint, Plaintiff alleges that Defendant Overton is personally involved in the alleged constitutional violations by virtue of "the DC-ADM 814 policy, Supervisor who learned of the violation of the Plaintiff rights and failed to do anything to fix the situation; as supervisor created policy or custom allowing or encouraging such illegal acts."  ECF No. 4, ¶ 72.

The law is clear that if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper, 2006 WL 3208783, at * 14.  Accordingly, Plaintiff has failed to allege the personal involvement of Defendant Overton in his complaint and she should be dismissed from this action.

In his Opposition Brief, Plaintiff attempts to expand on his theory of Defendant Overton's personal involvement in the alleged constitutional violations.  He explains:

> As to Defendant Overton deliberate acts of indifference, she is personally involve [sic] and had knowledge of the Plaintiff injurys [sic] and complaints of pain.  As instructed by the Director of Bureau of Health Care Services the Plaintiff directed his complaints and health concern directly to Defendant Overton via request of staff on numerous occasion [sic], however, she refuse to respond or address the Plaintiff concern or do any [sic] to correct medical personnel from denying him treatment.  In fact this left the Plaintiff with the only option of deep submitting sick call slip and grievances.

ECF No. 27, page 11.  Plaintiff's explanation is not sufficient to state a claim against Defendant

Overton even if this Court were to allow Plaintiff to amend his complaint[4] to further expand

upon these factual allegations.

Non-medical prison officials, such as Defendant Health Services Administrator Overton,

are not

> […] considered deliberately indifferent simply because they failed to respond
> directly to the medical complaints of a prisoner who was already being treated by
> the prison doctor. […]  If a prisoner is under the care of medical experts, a non-
> medical prison official will generally be justified in believing that the prisoner is
> in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their
> assistants are mistreating (or not treating) a prisoner, a non-medical official […]
> will not be chargeable with […] deliberate indifference [under the Eighth
> Amendment].

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer v. O'Carroll, 991 F.2d 64, 69

(3d Cir. 1993).  See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.).  In

other words, a non-medical supervisory official may only be held liable if there was "knowledge

of 'malicious' and 'sadistic' medical mistreatment."  Henderson v. Bussanich, 2006 WL

3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-37.

In her capacity as the Health Services Administrator, Defendant Overton is not

deliberately indifferent if she failed to respond to Plaintiff's medical complaints while he was

under the care of medical professionals.  See Spruill, 37 F.3d at 256.  Defendant Overton's

---

[4]  Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when
justice so requires."  Id.  "In the absence of any apparent or declared reason--such as undue
delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies
by amendments previously allowed, undue prejudice to the opposing party by virtue of
allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules
require, be freely given."  Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules
of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail
to state a claim upon which relief could be granted.  In re NAHC, Inc. Securities Litig., 306 F.3d
1314, 1332 (3d Cir. 2002).

reliance on the opinion of medical professionals even as Plaintiff grieved his dissatisfaction with his medical care and treatment does not show that Overton possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon her.  See Henderson, 2006 WL 3761998.   Furthermore, it is not the responsibility of the Health Services Administrator to order the treatment sought by Plaintiff.  See Josey v. Beard, 2009 WL 1858250, at *7 (W.D. Pa. 2009).[5]

Accordingly, Plaintiff has failed to state a claim against Defendant Overton and the motion to dismiss should be granted and she should be dismissed from this case.

### 3)  Defendant Lucas

Plaintiff alleges that Defendant Lucas initially denied him admission to the Medical Department and upon his eventual admission, failed to perform an examination and treated him hostility.  ECF No. 4, ¶ ¶ 32-35.  Plaintiff alleges that the delay in care and hostile treatment were a result of Plaintiff's being involved in an altercation with a staff member.  Id.

Because deliberate indifference can be manifested by an intentional refusal to provide care, as well as a delay in medical treatment for non-medical reasons (see Durmer, 991 F.2d 64), Plaintiff has stated a viable claim against Defendant Lucas and the motion to dismiss for failure to state a claim should be denied.

### 4)  Defendant McConnell

Plaintiff's allegations against Defendant McConnell sound in retaliation.  This

---

[5]   The responsibilities of the Health Services Administrator include managing the Health and Dental Departments of the prison, overseeing nursing staff, and overseeing independent contractors, such as Prison Health Services, Inc.  Id.

Court reads Plaintiff's allegations as stating that Defendant McConnell allegedly engaged in a campaign of retaliation against Plaintiff beginning after January 29, 2010, when he was assigned as the grievance officer (presumably to investigate the physical encounter between Defendant Hewitt and Plaintiff). Defendant McConnell allegedly watched Plaintiff on the security camera and directed another officer (not named as a defendant to this action) to fabricate a misconduct report, remove Plaintiff from his kitchen job, and conduct a cell search. Id. at ¶ ¶ 42-45.

In their motion to dismiss, Defendants take each allegation separately arguing that Defendant McConnell should be dismissed from this lawsuit as 1) there was evidence to support the misconduct; 2) prisoners have no expectation or interest in keeping their prison jobs; and 3) prisoners have no Fourth Amendment right to be free of cell searches. Defendants have mischaracterized Plaintiff's claims against Defendant McConnell. Here, it is Plaintiff's point that each of these actions were taken by Defendant McConnell in retaliation for complaining about Defendant Hewitt, not that each of these alleged actions are a violation of Plaintiff's constitutional rights.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 48, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment rights."); White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990) ("Retaliation for the exercise of constitutionally

protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must allege:

1)  The conduct in which he was engaged was constitutionally protected;

2)  he suffered "adverse action" at the hands of prison officials;[6] and

3)  his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  See also Holbrook v. Walters, 296 Fed. Appx 230, 233 (3d Cir. 2008).[7]

Here, Plaintiff alleges that he filed a grievance (which is constitutionally protected conduct) and that shortly thereafter, Defendant McConnell began his campaign of retaliation against Plaintiff (which would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights and was at least suggestively close in temporal proximity to the protected conduct).  These allegations are sufficient to state a retaliation claim against Defendant McConnell and accordingly, the motion to dismiss should be denied as to this Defendant.

---

[6]  To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225.

[7]  Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.

### 3)  Defendant Breckenridge

This Court liberally construes Plaintiff's allegations against Defendant Breckenridge as complaining that he participated with Defendant McConnell in the retaliation against Plaintiff by issuing a false misconduct in order to have Plaintiff removed from his food service job.[8]

Defendants argue that the claims against Defendant Breckenridge should be dismissed because there was sufficient evidence of Plaintiff's guilt "to negate any claim for retaliation." ECF No. 25, page 12.

Again, Defendants misinterpret retaliation law (see Mitchell, 318 F.3d 523).  To the extent that Plaintiff alleges that Defendant Breckenridge acted with a retaliatory motive in disciplining him and attempting to remove him from his prison job, such an allegation sufficiently states a retaliation claim.  The motion to dismiss should be denied in this regard.

### 4)  Defendant Sobina

Plaintiff makes many allegations against Defendant Sobina, mostly centering around Sobina's alleged responsibility for the actions of his subordinates, both in the inadequate medical treatment and the retaliation.  As previously discussed, it is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a § 1983 civil rights action.  See Monell, 436 U.S. 658.  In order for an individual defendant to be found liable in a civil rights action, the supervisor must be personally involved in the alleged misconduct.  Rode,

---

[8]  Specifically, Plaintiff alleges:  "on 2.13/2010 while at work in dietary the Plaintiff was sent back to his housing unit for stretching by Defendant Breckenridg [sic], the Plaintiff asked Defendant Breckenride [sic] why was he doing this and the Defendant told him he was just doing his job that he was told if I do anything I'm to be written up and removed from [t]his job. Defendant Breckenridge wrote misconduct #A913573 requesting the Plaintiff please be removed form [sic] this job also fabricating exercise the Plaintiff wasn't doing.  The Plaintiff filed a grievance for retaliation #308210 on CFSI Breckenfidge [sic].  Defendant Breckenridge also told another inmate he was told to write up the Plaintiff for anything and remove him from his job." ECF No. 4, ¶¶ 52, 53.

845 F.2d at 1207. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Thomas, 463 F.3d at 298 quoting Rode, 845 F.2d at 1207.

Just as with Defendant Overton, Defendant Sobina, as a non-medical supervisory staff person, cannot be held liable for the acts of his subordinates unless he had "knowledge of malicious and sadistic medical mistreatment." Henderson, 2006 WL 3761998. Defendant Sobina is not deliberately indifferent if he failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. Furthermore, Defendant Sobina's reliance on the opinion of medical professionals even as Plaintiff grieved his dissatisfaction with his medical care and treatment does not show that Sobina possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon him. Furthermore, it is not the responsibility of the Warden or Superintendent of a prison to order specific medical treatment. Plaintiff has failed to state a claim of deliberate indifference against Defendant Sobina.

In his Opposition Brief, Plaintiff explains his version of Defendant Sobina's involvement in the retaliation claim. Plaintiff argues that Sobina "did absolutely nothing to help the Plaintiff but try to shut the Plaintiff up by maliciously ordering an investgate [sic] cell search leaving the Plaintiff cell is disarray and look around for any paper work of a lawsuit on March 8, 2010." ECF No. 27, page 16.[9] Plaintiff's argument here suffices to state a retaliation claim against Defendant Sobina and so the motion to dismiss should be denied as to the retaliation claim.

---

[9]  Plaintiff further expands "on March 8, 2010, the Plaintiff was subjected to investigative cell search, he was strip searched and humiliated and cell left in disarray. The Plaintiff was told they were to look around in the Plaintiff property with regards to any information of a lawsuit by McConnell. The Plaintiff later found out the order came down Sobina from Sobina [sic] to deter the Plaintiff from complaining about Medical." ECF No. 27, page 22.

**E.  The Motion to dismiss filed by PHS Defendants**

   **1) Deliberate indifference**

Initially, the PHS Defendants argue that the case against them should be dismissed as

Plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs

only when state officials are deliberately indifferent to serious medical needs.[10]  Estelle v.

Gamble, 429 U.S. 97 (1976).  Deliberate indifference may be manifested by an intentional

refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed

medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of

injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of

permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  Deliberate indifference

is generally not found when some level of medical care has been offered to the inmate.  Clark v.

Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth

Amendment claims where an inmate has received some level of medical care").

Although Plaintiff was examined by medical staff repeatedly over the course of several

months following his injury, Plaintiff argues that Defendants failed to appropriately treat him and

falsified medical records in order to cover-up the assault and protect their co-worker Hewitt.

Given that we must view the alleged facts in the light most favorable to the non-movant, Plaintiff

---

[10]   The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison
officials and it requires that the prisoner's medical needs be serious."  West v. Keve. 571 F.2d
158, 161 (3d Cir. 1978).  A serious medical need is "one that has been diagnosed by a physician
as requiring treatment or one that is so obvious that a pay person would easily recognize the
necessity for a doctor's attention."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987).

has sufficiently stated a claim of deliberate indifference and the motion to dismiss should be denied.[11]

### 2) Respondeat Superior

Next, the PHS Defendants argue that Defendant Baker should be dismissed from this case because Plaintiff has failed to allege his personal involvement.

The complaint contains one allegation against Baker and indeed, that allegation is grounded in the theory of *respondeat superior* and fails to state a claim.  See ECF No. 4, ¶ 61. However, in a sworn affidavit from Plaintiff, he swears that he recently reviewed his medical files and there are several notations and signatures by Defendant Baker during the relevant time frame.  ECF No. 48.  Although the complaint fails to allege Defendant Baker's personal involvement, this Court should deny the motion to dismiss based upon Plaintiff's status as a pro se litigant and as the non-movant in the face of the motion to dismiss.

### 3) Failure to Exhaust

Finally, the PHS Defendants move to dismiss based upon Plaintiff's failure to exhaust his administrative remedies.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

---

[11]   The PHS Defendants move to dismiss Plaintiff's request for punitive damages as they argue that Plaintiff has not made any allegation that Defendants acted "with evil motive or intent," or acted in a way that "involves recklessness or callousness to the federal protected rights of others."  ECF No. 33, page 9.  Defendants are mistaken in this regard as Plaintiff alleges that Defendants acted together to falsify medical records and cover-up the assault by their co-worker. Defendants' request that Plaintiff's claim for punitive damages be dismissed should be denied.

Id.[12]

It is not a plaintiff's burden to affirmatively plead exhaustion.  Jones v. Bock, 549 U.S. 199, 217  (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); . Instead, the failure to exhaust must be asserted and proven by the defendants.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  Id. at 83; see also Spruill,  372 F.3d at 228-29 (utilizing a procedural

---

[12]  Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

The PHS Defendants' failure to exhaust argument is two-fold: first, Plaintiff has not named Defendants Gilreath and Baker in any of his grievances, and second, Plaintiff did not properly exhaust his grievance regarding Defendant Mowry's alleged failure to treat him on February 11, 2010.  Defendants bear the burden of proof on a failure to exhaust defense.  Ray, 285 F.3d 287.  Here, Defendants have not met their burden at this early stage of the litigation. The only documents before this Court on the failure to exhaust defense are those attached to the complaint.  Several of those documents are either completely or partially illegible and there is no documentation that this group of grievances is all-inclusive in order for this Court to determine whether Plaintiff has failed to exhaust his claims raised in this complaint.

Accordingly, the motion to dismiss should be denied.


III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the partial motion to dismiss filed by the Commonwealth Defendants [ECF No. 24] be granted in part and denied in part.  More specifically, the motion to dismiss should be granted:  1) as to the claims against Defendants Robertson and Overton; 2) granted as to the deliberate indifference claims against Defendant Sobina; 3) denied as to the claims against Defendants Defendant Lucas, Defendant

McConnell, Defendant Breckenridge; and 4) denied as to the retaliation claims against Defendant Sobina.  The Clerk of Courts should be directed to terminate Defendants Robertson and Overton from this action.

It is further recommended that the motion to dismiss filed by Defendants Baker, Telega, Gilreath and Mowery [ECF No. 32] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  No extensions of time will be granted.  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  September 16, 2011