IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MARSHALL, | ) | |
| Plaintiff, | ) | Civil Action No. 10-169 Erie |
| | ) | |
| v. | ) | District Judge Cohill |
| | ) | |
| RAYMOND SOBINA, et al, | ) | Magistrate Judge Baxter |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

Following a telephonic hearing held on February 11, 2013, it is respectfully recommended that Plaintiff's motion for injunctive relief [ECF No. 81] be denied.

**II.   REPORT**

**A.   Relevant Procedural History**

Plaintiff, a state inmate currently incarcerated at the State Correctional Institution at Somerset, initiated this civil rights action on July 13, 2010. Plaintiff, acting *pro se*, alleges that during his incarceration at SCI-Albion, the named Defendants violated his constitutional rights under the Eighth Amendment in several ways. Plaintiff claims (1) he was assaulted by Defendant Hewitt, a guard, (2) he received inadequate medical care following the assault, and (3) he was retaliated against by the Commonwealth Defendants[1] after he filed grievances. ECF No.

---

[1] This Court does not read the complaint as alleging any claim of retaliation against the PHS Defendants.

1

4. In particular, Plaintiff claims that he has never been treated for an alleged fractured shoulder, which he claims that he suffered in the altercation.

As Defendants to this action, Plaintiff names the following: Raymond Sobina, Superintendent; Maxine Overton, Health Care Administrator; Lieutenant William McConnell; Lt. Robertson; Col. Hewitt; Scott Breckenridge, an employee of the Food Service Department; and Ralph Lucas, an RN, all of the Department of Corrections of the Commonwealth (hereinafter referred to as the "Commonwealth Defendants[2]"); and Daniel Telega; Tammy Mowry; Dr. Mark Baker; and Dr. Valerie Gilrealth, all of Prison Health Services, Inc. (hereinafter referred to as the "PHS Defendants"). These two groups of Defendants are represented separately.

Plaintiff alleges in his Motion for Injunctive Relief that his "right clavicle was fractured and right sternoclavicular joint [was] partially dislocated" during the altercation with Defendant Hewitt on January 28, 2010. ECF No. 81, ¶ 7. He claims that because of improper treatment of this alleged fracture, he now suffers from Post Traumatic Osteoarthritis. Id. at ¶ 16. Plaintiff's motion provides a continuing narrative of his complaints of chest/shoulder/neck pain and his ongoing medical treatment. Plaintiff points out that as recently as December of 2012, he was given pain medications, "another rheumatoid arthritis test," and he was scheduled for a consultation with an orthopedic surgeon, which occurred in January 2013. Id. at ¶ 14.

According to the exhibits offered by Plaintiff, Dr. Girdany of Somerset Orthopedics ordered a CT scan to confirm his "presumption [] of a SE dislocation or subluxation" as far back as March 18, 2011. ECF No. 81, Exh. D. The results of the CT did **not** confirm his presumption, however:

> IMPRESSION: The principle (sic) concern is that of a
> Spondylarthropathy such as rheumatoid arthritis. The differential

---

[2] Defendants Overton and Robertson have previously been dismissed from this case.

2

> diagnosis includes post traumatic osteolysis as seen in weight lifters.[3]

ECF No. 81, Exh E. On July 29, 2011, Dr. Girdany reported to Dr. Maxa that the CT scan showed joint "irregularity" on both sides of the body, but that since "his pain is confined to [the right shoulder] area, I have recommended an ST joint injection." ECF No. 81, Exh F. As Defendants point out, Dr. Girdany did not at that time or since diagnose a fracture from Plaintiff's altercation with Defendant Hewitt. In fact, they note that Plaintiff was examined by Dr. Girdany for at least the third time as recently as on January 4, 2013, with no medical notation of any fracture. ECF No. 85 at 6-7. Plaintiff insists, however, that he suffered a fracture in 2010.

In his prayer for relief, Plaintiff seeks an order directing the "Medical Providers" to have Plaintiff examined by independent doctors for the following treatment and diagnosis:

1) examination by Rheumatologist for definitive diagnosis of osteoarthritis and its cause;

2) an MRI for specific identification of dislocation of the Plaintiff's right sternoclavicular joint, identification of "callus" on the Plaintiff right clavicle, or healed and unhealed fractures and cervical for diagnosis and appropriate treatment; and

3) examination by Cardiothoracic surgeon for proximal clavicle resection.

ECF No. 81, ¶ 23.

**B. Analysis**

Preliminary or temporary injunctive relief is "a drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed.Cir.1993); see also Hoxworth v. Blinder, Robinson & Company. Inc., 903 F.2d 186, 189

---
[3] Plaintiff is a weight lifter.

3

(3d Cir. 1990). The four factors that must be shown for the issuance of a temporary restraining order are the same as those required to issue a preliminary injunction. Fink v. Supreme Court of Pennsylvania, 646 F.Supp. 569, 570 (M.D.Pa. 1986).

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) quoting Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010).

A preliminary injunction is an extraordinary remedy, and the party seeking it must show, at a minimum, a likelihood of success on the merits and irreparable harm in the absence of the injunction. See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000). The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the likelihood of success on the merits and the irreparable harm. Neo Gen Screening, Inc. v. TeleChem Intern., Inc., 69 Fed.Appx. 550, 554 (3d Cir. 2003).

By Plaintiff's own admission at the telephonic conference, he was examined as recently as January of 2013 for his medical complaints. Plaintiff's own motion acknowledges that he has been tested for rheumatoid arthritis with negative results. ECF No. 81, ¶ 16. In addition, the medical record is replete with treatment for Plaintiff's shoulder since the altercation. Although Plaintiff is insistent he had an untreated fracture and dislocation of the shoulder, none of the extensive testing supports this claim. Thus, Plaintiff either disagrees with the diagnoses made over the past years, or wishes to have a different course of treatment, including surgery. Nothing in the record supports the notion that any of the treatment given to Plaintiff has caused him

irreparable harm. In fact, even if, as Plaintiff suspects, he has some degenerative joint disease, he has not met his burden to demonstrate that his current treatment will cause him irreparable harm in the future. Additionally, since the record before this Court demonstrates that Plaintiff has received extensive medical treatment, his likelihood of success on the merits of his Eighth Amendment claim of deliberate indifference is slim[4].

Finally, even if Plaintiff had met his burden on the four factors necessary for the grant of preliminary injunctive relief, the relief he seeks is not available against these Defendants. These named Defendants do not currently have any control over Plaintiff as he is now incarcerated at SCI-Somerset.

Accordingly, Plaintiff's motion for injunctive relief should be denied.

---

[4] In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

Such deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for injunctive relief [ECF No. 81] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February13, 2013