# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MARSHALL, | ) | |
| Plaintiff, | ) | Civil Action No. 10-169Erie |
| | ) | |
| v. | ) | District Judge Maurice Cohill |
| | ) | |
| RAYMOND SOBINA, et al, | ) | Magistrate Judge Susan Paradise Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the motion for summary judgment filed by Defendants Baker, Telega, Gilreath and Mowry [ECF No. 82] be granted in part and denied in part. The Clerk of Courts should be directed to terminate Defendants Baker and Gilreath from this action.

It is further recommended that the partial motion for summary judgment filed by the Commonwealth Defendants [ECF No. 86] be granted in part and denied in part. The Clerk of Courts should be directed to terminate Defendant Breckenridge.

### II. REPORT

#### A. Relevant Procedural History

Plaintiff, a state inmate currently incarcerated at the State Correctional Institution at Albion, initiated this civil rights action on July 13, 2010. Plaintiff, acting *pro se*, alleges that

1

Defendants violated his constitutional rights under the Eighth Amendment in numerous ways. Plaintiff claims he was assaulted by Defendant Hewitt, a guard, received inadequate medical care following the assault, and he was retaliated against by the Commonwealth Defendants after he filed grievances. ECF No. 4. As Defendants to this action, Plaintiff names the following: Raymond Sobina, Superintendent; Maxine Overton, Health Care Administrator; Lieutenant William McConnell; Lt. Robertson; Col. Hewitt; Scott Breckenridge, an employee of the Food Service Department; and Ralph Lucas, an RN, all of the Department of Corrections of the Commonwealth (hereinafter referred to as the "Commonwealth Defendants"); and Daniel Telega; Tammy Mowry; Dr. Mark Baker; and Dr. Valerie Gilrealth, all of Prison Health Services, Inc. (hereinafter referred to as the "PHS Defendants"). These two groups of Defendants are represented separately.

In response to the Complaint, the Commonwealth Defendants Robertson, Lucas, McConnell, Breckenridge, Sobina, and Overton[1] filed a partial motion to dismiss arguing that Plaintiff has failed to adequately allege personal involvement by Defendants Robertson, Lucas, McConnell, Breckenridge, Sobina, and Overton. ECF No. 24. The PHS Defendants filed a motion to dismiss arguing for dismissal based in part upon Plaintiff's failure to state a claim of deliberate indifference. ECF No. 33. These motions were granted in part and denied in part and Defendants Robertson and Overton were dismissed from this action. ECF Nos. 53, 55.

Presently pending before this Court are motions for summary judgment filed by both sets of Defendants. These issues are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

---

[1] Defendant Hewitt filed an Answer to the Complaint and did not join in the motion to dismiss or the motion for summary judgment.

2

### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. Plaintiff's General Factual Allegations

#### 1) Allegations against the Commonwealth Defendants

Plaintiff alleges that around January 28, 2010, he and Defendant Hewitt became

4

involved in a verbal and physical confrontation that resulted in injuries to Plaintiff. ECF No. 4, Complaint, ¶ ¶ 21-29.

Plaintiff alleges that Defendant Lucas, an RN, initially denied him emergency admission to the Medical Department until Plaintiff wrote up a sick call slip requesting medical attention. Id. at ¶ ¶ 32-34. Plaintiff alleges that once he eventually arrived at the Medical Department, he was seen by Defendant Lucas who only took his vital signs and interrogated him in a hostile manner about the cause of his injuries. Id. at ¶ 34. Plaintiff alleges that Defendant Lucas deliberately advised Defendant Telega, the physician assistant who conducted the physical examination, that Plaintiff was alluding to an assault by an officer and Defendant Lucas attempted to "sabotage and deprive the Plaintiff of treatment to cover evidence of Defendant Hewitt's assault." Id.

Defendant McConnell allegedly engaged in a campaign of retaliation against Plaintiff beginning after January 29, 2010, when he was assigned as the grievance officer (presumably to investigate the physical encounter between Defendant Hewitt and Plaintiff). Defendant McConnell allegedly watched Plaintiff on the security camera and directed another officer (not named as a defendant to this action) to fabricate a misconduct report, remove Plaintiff from his kitchen job, and conduct a cell search. Id. at ¶ ¶ 42-45.

Plaintiff alleges that Defendant Breckenridge, an employee of the food service department, fabricated a reason for Plaintiff's removal. Id. at ¶ 52.

Plaintiff alleges that Defendant Sobina, the warden, was responsible for and involved in the inadequate medical treatment as well as the retaliation.

### 2) Allegations against the PHS Defendants

Plaintiff was examined by Defendant Telega on January 28, 2010, the date of the incident. According to Plaintiff, Telega treated him "aggressively" and "meanly," and when Plaintiff was physically unable to put his right arm behind his back (due to his broken collar bone), Telega "became angry, and aggressively and vindictively applied pressure to the Plaintiff [sic] collarbone." Id. at ¶ 35. Telega allegedly lost control, cursed at Plaintiff, told him he was faking, and told him to "get the fuck out his office and to get dress [sic] in the hallway." Id. at ¶ 36. At this visit, Plaintiff received no pain medication, no ice for swelling, and no x-ray. According to Plaintiff, Defendants Telega and Lucas denied any injury existed. Id. at ¶ 38.

Plaintiff was seen by Defendant Mowry on February 1, 2010, after he submitted a sick call slip requesting medical attention. Id. at ¶ 39. Mowry then refused to provide Plaintiff with any medical treatment telling him that she would not second guess another physician assistant. Id. Plaintiff showed his swollen collarbone to Mowry and he was asked to leave her office. Plaintiff requested photos be taken of his injuries and an officer photographed Plaintiff. Id. at ¶ 40. Plaintiff renewed his request for pain medication and Mowry charged Plaintiff for ten days of pain medication, but he received none for several days. Plaintiff alleges that Mowry performed no physical examination. Id.

On February 5, 2010, an x-ray was taken of Plaintiff's right shoulder. Id. at ¶ 48. On February 11, 2010, Plaintiff was seen by Defendant Mowry for his "chronic pain from his chest and shoulder that his collarbone protruding out his chest." Id. at ¶ 49. Defendant Mowry refused any medical treatment. When Plaintiff requested that Defendant Mowry perform an exam of the lump on this chest, she became hostile and told him the x-ray indicated there were no injuries. Id. at ¶ 50.

On February 18, 2010, Plaintiff was seen by Defendant Dr. Gilreath who examined the collarbone, found it abnormal, and ordered further x-rays and 30 days of pain medications. Id. at ¶ 54. On March 8, 2010, Plaintiff was seen by Defendant Gilreath, who indicated that his x-ray was negative. Plaintiff requested another medical opinion. Id. at ¶ 59. On April 10, 2010, Defendant Gilreath examined Plaintiff who complained of chest and shoulder pain. Defendant Gilreath found the right clavicle abnormal and ordered a CT scan of the area. Id. at ¶ 60.

On May 25, 2010, Plaintiff was transported to Meadville Hospital for a CT scan. Id. at ¶ 63. On June 10, 2010, Defendant Gilreath informed Plaintiff that the CT scan revealed that his clavicle and sternum were both fractured. Id. at ¶ 65. Plaintiff's fractured bones fused together incorrectly causing deformity. Id. at ¶ 67.

Plaintiff alleges that Defendant Dr. Mark Baker is the medical director and the primary supervising physician and is responsible for the performance of the physician assistants. Id. at ¶ 61.

### D. PHS Defendants' Motion for Summary Judgment

#### 1) Exhaustion

The PHS Defendants move for summary judgment on some of Plaintiff's claims arguing that Plaintiff has failed to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, ___ F.3d ___, ___, 2013 WL 4504761, at *2 n.3 (3d Cir. Aug.26, 2013).[5] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands

---

[4] It is not a plaintiff's burden to affirmatively plead exhaustion. Small v. Camden County, ___ F.3d ___, ___, 2013 WL 4504761, at *2 n.3 (3d Cir. Aug.26, 2013); Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Moreover, "the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim. Small, ___ F.3d at ___, 2013 WL 4504761, at *2 (emphasis in original) quoting Jones, 549 U.S. at 220-24.

[5] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 2013 WL 450476, at *3, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[2]

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2

---

[2] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

(3d Cir. 1997), aff'd. 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. Spruill, 372 F.3d at 234. See also ECF No. 84-12, Exhibit K.

The PHS Defendants argue that Plaintiff has failed to exhaust claims against Baker and Gilreath, and some of his claims against Mowry. The evidence before this Court reflects that Plaintiff filed several grievances about the subject matter of this civil action:

- 307831 dated 1/29/2010
- 307831 dated 2/11/2010
- 307841 dated 2/11/2010
- 308385 dated 2/18/2010
- 311538 dated 3/18/2010

ECF No. 84-11. The first grievance filed the day after the incident with Officer Hewitt focused on the assault and the deprivation of food[3], and did not grieve any claim related to the PHS

---

[3] Grievance 307831 dated 1/29/2010 reads:

> This grievance is an allegation of the following: 1) physical abuse assault, on part of Officer Hewitt, 2) sexual assault, sexual harassment on part of Officer Hewitt and, 3) deprivation of food as punishment on part of CO Hewitt and Lt. Robertson. On 1-28-10 while attending mourning [sic] meal line CO Modanodo told Officer Hewitt I told someone he was not their supervisor, because office Hewitt stopped the line at the window and was yelling and intimidating staff and window worker. When I reached the window to receive my food it was not give[n] to me right away so I mention to the window worker that he was not his supervisor because his supervisor was standing right next to him so it was okay for him to give me my food. While walking to the table CO Modanodo pointed to me telling CO Hewitt I said that he not their supervisor. As I sat at the table to eat CO Hewitt put his hand in my face angerly [sic], loudly demanding to know what bock I was on, I told him GB. He then asked me which cell. I asked CO Hewitt why was he standing over me and my food yelling. Why did he want to know what cell I lived in. he then asked me for my ID. I asked the CO could I eat. He told me no to go outside where he told me to get my hands up against the wall and push in the upper right side of back, causing me to hit my collarbone and right shoulder against the edge of the wall at the window injuring me, while doing his search. He then aggressively put his hands around my waist fingers going into my waist band towards my genitals then

10

Defendants. Grievances 307841 and 307831 involve the lack of treatment provided by Telega and Mowry on January 28th and February 1st, respectively, and were fully and properly exhausted.

Grievance 308385 (filed on February 18th) concerns lack of medical treatment by Mowry on February 11th. The record reflects that Plaintiff attempted to exhaust this grievance through all three levels of review, but the appeal was dismissed based on its untimeliness. Although Plaintiff argues that his attempts at exhausting 308385 were thwarted by prison staff, he argues no specifics and he provides no evidence in that regard as he must in the face of a well-supported motion for summary judgment. See Celotex. Accordingly, because Plaintiff has not properly exhausted this claim, summary judgment should be granted in favor of Defendants. See Woodford, 548 U.S. at 83.

Plaintiff has not filed a single grievance against either Dr. Gilreath or Dr. Baker, and accordingly, summary judgment should be granted in their favor since Plaintiff has failed to exhaust his administrative remedies as to the claims against them. [4]

### 2) Deliberate Indifference Claims against Telega and Mowry

> when pat searching my legs he brought his arm under between my legs upwards very hard against my genital. He then aggressively grabbed me by the right arm and took me twenty foot to Lt. Robertson where he again made me put my hands on the wall to humiliate me. I explained to Lt. Robertson what happen and he concerned with the officer's action and told me to go back to my housing unit. I told him I hadn't eaten and he told me I'm not going to eat."

ECF No. 84-11, page 4. Furthermore, in response to the question that directed that the prisoner list the actions taken and staff contacted before submitting this grievance, Plaintiff wrote: "requested to see medical when I returned to Housing unit due to injury from officer Hewitt pushing me into a wall causing to injure collarbone and shoulder." Id.

[4] Plaintiff's argument that his failure to exhaust (by way of a procedural default) any claims against Gilreath and Baker should be excused because Gilreath and Baker are not mentioned in either of the fully and properly exhausted grievances against Telega and Mowry.

11

The reaming deliberate indifference claims against Telega and Mowry stem from medical treatment on 1/28 and 2/1. Plaintiff was examined by Defendant Telega on January 28, 2010, the date of the Incident with Officer Hewitt. Telega treated Plaintiff "aggressively" and "meanly," and when Plaintiff was physically unable to put his right arm behind his back (due to his broken collar bone), Telega "became angry, and aggressively and vindictively applied pressure to the Plaintiff [sic] collarbone." ECF No. 4, ¶ 35. Telega allegedly cursed at Plaintiff and told him he was faking, and told him to "get the fuck out his office and to get dress [sic] in the hallway." Id. at ¶ 36. Plaintiff received no pain medication, no ice for swelling, and no x-ray at this medical visit and Defendants Telega and Lucas denied that any injury existed. Id. at ¶ 38.

Plaintiff was seen by Defendant Mowry on February 1, 2010, but Mowry refused to provide Plaintiff with any medical treatment and did not perform any physical exam. Plaintiff showed his swollen collarbone to Mowry and he was asked to leave her office. Id. at ¶ ¶ 39 - 40.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials[5] and it requires that the prisoner's medical needs be serious." West v. Keve. 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

---

[5] "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Defendants argue both that Plaintiff did not have a serious medical need and that Mowry and Telega were not deliberately indifferent to that medical need.

Summary judgment should be denied on the claim because there are material issues of fact as to whether Plaintiff's condition rose to the level of a serious medical need and whether Telega's actions on January 28th and Mowry's actions on February 1st constituted deliberate indifference toward that need. These issues are more appropriately determined by the trier of fact.

### E. Commonwealth Defendants' Motion for summary judgment

#### 1) Exhaustion

Defendants argue that Plaintiff failed to exhaust claims against them arising from three separate incidents: 1) misconduct dated February 2, 2010 (B144269); 2) misconduct dated February 13, 2010 (A913573); and 3) loss of job in kitchen.

The record reflects that Plaintiff did not appeal either misconduct[6]. ECF No. 89-3, Declaration of Zachary Moslak, Hearing Examiner Supervisor, page 20. Plaintiff has provided no evidence to the contrary as he must in order to defeat a motion for summary judgment. Accordingly, summary judgment should be granted in favor of Defendants on the retaliation claims arising out of the two misconducts.

Additionally, the evidence reflects that Plaintiff did not grieve the termination of his employment in the kitchen. ECF No. 89-3, Declaration of Melinda Adams, Facility Grievance

---

[6] DC-ADM 801 explains the appeal process relative to inmate discipline, which differs slightly from DC-ADM 804. Misconducts can be appealed to first to the PRC, second to the Facility Manager, and finally to the Office of Chief Counsel.

Coordinator, page 2. Again, Plaintiff has provided no evidence to the contrary, and summary judgment should be granted in favor of Defendants on this retaliation claim.

### 2) Deliberate Indifference Claim against Nurse Lucas

Because there are material issue of facts as to whether Plaintiff had a serious medical need and whether Lucas' delay or treatment constituted deliberate indifference toward that medical need, summary judgment should be denied.

### 3) Retaliation Claim

The only retaliation claim surviving the exhaustion analysis stems from the March 8th cell search. Plaintiff alleges that a cell search was performed and that he was strip searched, as ordered by Sobina and/or McConnell, in retaliation for Plaintiff's complaints about medical issues, and that prison staff were instructed to search for "something about a law suit." ECF No. 4, ¶ 58.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 48, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment rights."); White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990) ("Retaliation for the exercise of constitutionally

protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must allege:

> 1) The conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Holbrook v. Walters, 296 Fed. Appx 230, 233 (3d Cir. 2008).

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Here, Plaintiff's filing of the grievances in February and March satisfies the constitutionally protected conduct prong. To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225. Plaintiff cannot satisfy the adverse action prong of the *prima facie* case as all inmates are subject to at least two random cell searches per year. See generally Curtician v. Kessler, 2010

15

WL 6557099 (W.D. Pa.). Furthermore, to the extent that Plaintiff complains that his cell was searched repeatedly during February and March of 2010, the evidence reflects that his cellmate during this time was found with several contraband items that could be used as weapons (on February 2nd) and that any searches of their shared cell thereafter were investigative in nature and related to the cellmate's ongoing issues. ECF No. 89-3, Declaration of Jeffrey White, page 17-18. This evidence constitutes a legitimate penological reason for the repeated cell searches.

However, Commonwealth Defendants do not address Plaintiff's claim that the strip search on March 8th was retaliatory in nature, and therefore, that claim remains pending against McConnell and Sobina.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for summary judgment filed by Defendants Baker, Telega, Gilreath and Mowry [ECF No. 82] be granted in part and denied in part. The Clerk of Courts should be directed to terminate Defendants Baker and Gilreath from this action.

It is further recommended that the partial motion for summary judgment filed by the Commonwealth Defendants [ECF No. 86] be granted in part and denied in part. The Clerk of Courts should be directed to terminate Defendant Breckenridge.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). No extensions of time will be granted. Failure to file timely

objections may constitute a waiver of appellate rights. See <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Dated: August 30, 2013