# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MARSHALL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 10-169E |
| RAYMOND J. SOBINA et al, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Pending before this Court is *pro se* Plaintiff James Marshall's "Motion for Sanction" [ECF #128]. In footnote 4 of her June 2, 2014 Report and Recommendation (R&R), wherein Magistrate Judge Baxter recommended that this Court grant in part and deny in part the Defendants' Motions for Summary Judgment and Partial Summary Judgment, Magistrate Judge Baxter noted:

> Plaintiff has also filed a Motion for Sanctions pursuant to Federal Rule 37 which remains pending. ECF No. 128. See also ECF Nos. 130, 131. The bases of this motion are Exhibits 20, 21, 22, and 23 attached to the Department of Corrections Defendants' motion for summary judgment. Plaintiff argues that Defendants should be sanctioned due to their failure to disclose or supplement their answers to Interrogatories. Resolution of this motion and attendant issues of forgery of evidence will necessarily affect evidentiary rulings for trial and, as such, will be left for the trial judge to determine."

Id.

In his motion, Plaintiff contends that the Department of Corrections ("DOC") Defendants failed to disclose four (4) documents in discovery, even though specifically asked for in his Request for Interrogatories to Defendant Sobina on November 7, 2010, and his Request for Interrogatories to Defendant McConnell on December 12, 2011. Therefore, Plaintiff submits, these defendants should be precluded from using the exhibits and he should receive monetary

compensation for having to file a response to two motions for summary judgment filed by the DOC Defendants. Plaintiff's Motion, pp. 2-3. The documents, which are attached as exhibits in support of the DOC Defendants' pending motion for partial summary judgment, are: (1) Exhibit 20, which contains SCI-Albion search logs from February 2 and 14, 2010 and March 3, 2010; (2) Exhibit 21, Inmate Jack Williams' Cell History; (3) Exhibit 22, Inmate Thomas Chadwick's Cell History; and (4) Exhibit 23, SCI-Albion Duty Rosters from February 14, 2010 and March 8, 2010.

> Fed.R.Civ.P. 37(c)(1) states:
>
> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> (B) may inform the jury of the party's failure; and
>>
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Id.

In support of their contention that the motion for sanctions should be denied, the DOC Defendants explain the reason for the late disclosure to Plaintiff:

> the reason undersigned counsel recently searched for and submitted the documents concerning Inmate Williams' and Chadwick's cell histories, search logs and duty rosters, was because of the error she had made in then-Captain White's declaration for defendants' original summary judgment motion. This particular error, which Captain White also failed to catch before signing, was a reference to the wrong date (2/2/10 not 2/14/10) in describing a search of plaintiff's cell when Chadwick was his cell mate. Plaintiff's cell (CB 1003) was searched on 2/2/10 (the date of the cheese incident), and his cell mate at the time

2

was Inmate Williams. Cell CB 1003 was searched again on 2/14/10, at which point, Inmate Chadwick was plaintiff's cellmate. A broken razor belonging to Chadwick was found, and this led to the investigative search on 3/8/10 (the cell occupants were still plaintiff and Chadwick). Unfortunately, when counsel prepared the original Declaration for then Captain White, she mistakenly referred to "2/2/10" when describing the 2/14/10 search where contraband was found.

DOC Defendants' Response to Plaintiff's Motion for Sanction. p. 2 (footnote and citation to court docket omitted). The DOC Defendants further argue:

> When she filed the original motion for summary judgment, [counsel for the DOC Defendants] failed to recognize the extent to which the searches were at issue in the case, and did not anticipate the need to prove who was celled where. The focus of the Complaint and discovery had been on the alleged excessive force incident involving CO Hewitt in late January, plaintiff's medical care for his claimed injuries, and the loss of his dietary job. Accordingly, she did not devote the time and effort to obtain and review cell history, search and roster documents in connection with her original motion.
>
> Nor had counsel obtained these records in the course of discovery. Counsel did not have these documents prior to September 2013 and had not asked anyone to look for them in connection with discovery. She and prior counsel did not recognize the potential relevance of these documents at the time of preparing responses to plaintiff's broad, catch-all discovery requests. Indeed, their relevance did not become apparent until the summary judgment process.
>
> . . .
>
> Counsel admits that the duty rosters have come to be an important piece of evidence for the defense in this case, particularly as they show that Lt. McConnel[l] was **not** working on several of the search days. Again, counsel unfortunately did not question or doubt plaintiff's general description of events and failed to realize the extent of this *pro se* plaintiff's claims when it came to the search issue, particularly since he had been fairly vague on the search days other than 3/8/10.
>
> In sum, counsel submits that given the broad nature of plaintiff's claims, it was not clear at the time she was responding to discovery that the documents at issue (rosters, cell histories, logs) (i) even existed, and/or (ii) were responsive to plaintiff's requests. That became apparent much later, when preparing Objections to the R&R, and counsel provided copies to plaintiff with that filing.

Id. at pp. 3-4 (footnote omitted.

3

Turning to Plaintiff's discovery requests, on November 7, 2010 Plaintiff served the following interrogatory to Defendant Sobina: "Do you, your attorney, or any person employed by you or your attorney, have possession or know of the existence of any books[,] records, reports made in the ordinary course of business, other printed or documented material, or photographs, or other tangible objects that are relevant to the conduct described with the plaintiff complaint or in these interrogatories?" Plaintiff's First Set of Interrogatories, ¶ 25. Defendant Sobina responded: "The responding does not have possession of any documents relating to the above-captioned case as he is currently retired." Defendant Sobina's Response to Plaintiff's First Set of Interrogatories, ¶ 25.

Plaintiff filed a motion to compel Sobina to answer that and other requests. Essentially he argued that the information sought was reasonably calculated to lead to the discovery of admissible or relevant evidence and here "this Defendant belatedly continued to evasively assert 'he does not recall' and 'he no longer has access to this information because he is retired," which is insufficient. Brief in Support of Motion to Compel, p. 2. A hearing was held and Magistrate Judge Baxter denied Plaintiff's motion to compel as to number 25.

On December 2, 2011, Plaintiff submitted the following interrogatory to Defendant McConnell: "Are you aware of any statements, documents, photographs, recordings, videotapes, reports or other materials concerning the incidents described in the Complaint. If so, please describe and please produce." Plaintiff's First Set of Interrogatories, ¶ 15. Defendant McConnell responded: "This request is Objected to as seeking information that is too general, overbroad and unduly burdensome. Without waiver of this objection, see attached documents and documents provided throughout discovery." Defendant McConnell's Response to Plaintiff's First Set of Interrogatories, ¶ 15.

4

The following was alleged in Plaintiff's Complaint:

42. On 1/29/2010 Defendant McConnell was assigned the grievance officer for grievance #306245. Thereafter, Defendant Lt. McConnell began to target the plaintiff, he continuously kept the security surveil[l]ance camera on the plaintiff and his cell.

43. On 2/2/2010 Defendant Lt. McConnell called CB housing unit Officer Fie, Lt. McConnell directed this Officer (Fies) to stop inmate Day #GX-6976 to find out what was in his pocket. Inmate Day had cheese in his pocket which he didn't receive from the plaintiff. Defendant Lt. McConnell directed this officer to fabricate a misconduct report on the plaintiff #8144269 and confiscation receipt #Bl00055.

44. Defendant Lt. McConnell directed this officer to fabricate this inmate received the cheese from the plaintiff and vindictively that this officer to request the plaintiff be removed from his job in the report. He also directed this officer to fabricate this cheese was confiscate[d] from the plaintiff, when inf[a]ct it was confiscated from inmate Day.

45. Defendant Lt. McConnell further directed this officer to prevent the plaintiff from entering his cell two hours for his cell be search. The plaintiff cell was search and left in disarray. No item of contraband or any dietary, items was found. Inmate Day cell was not search nor was he restricted from entering his cell.

46. On 2/10/2010 the plaintiff cell was search again by officer Summers and another officer. This other officer mention to the plaintiff cellmate they were told to take care of us and asked what did your cellie do (the plaintiff), the plaintiff cell again was left indisarray.

47. On 2/14/2010 the plaintiff cell was again search by officer Odum and provident. The Plaintiff cell was again left in disarray. These acts of retaliation were reported in grievance #308316.

. . .

52. . . . on 2/13/2010 while at work in dietary the plaintiff was sent back to his housing unit for stretching by Defendant Breckenride, the plaintiff asked Defendant Breckenride why was he doing this and the Defendant told him he was just doing his job that he was told if I do anything I'm to be written up and removed from his job. Defendant Breckenridge wrote misconduct #A913573 requesting the plaintiff please be removed form this Job also fabricating exercise the plaintiff wasn't doing.

5

> 53. The plaintiff filed a grievance for retaliation #308210 on CFSI Breckenfidge. Defendant Breckenridge also told another inmate he was told to write up the plaintiff for anything and remove him from his job.
>
> . . .
>
> 56. . . . On 3/1/2010 the plaintiff spoke with Defendant Sobina about Defendant McConnell retaliation of having the plaintiff removed from his job, Defendant Sobina told the plaintiff that they cannot remove him from his job and to send you a request of staff.
>
> . . .
>
> 58. On 3/8/2010 a investigative search was performed on the plaintiff and his cell. The plaintiff was stripe search and cell left in disarray I was told Defendant McConnell ordered the search they were to look around regarding something about a law suit. The plaintiff gained information from inmate Butler event happen because Defendant Sobina was on the housing unit and called captained White and order the captain to give the plaintiff temperture check the guy who is giving medical problem, . . . this was reported in grievance #311543.

Complaint, ¶ 42-47, 52-53, 56 and 58 (citations to exhibits omitted).

Turning to the documents at issue, we conclude as follows. With respect to Exhibits 21 and 22, the cell histories of Williams and Chadwick, Plaintiff's cellmates on the dates when Plaintiff's cell was searched, we find that the late production of these documents to Plaintiff was substantially justified and harmless because there is no factual dispute between the parties as to who was Plaintiff's cell mate on the dates of the searches; the cell histories were only needed to prove the factual error in Jeffrey White's Declaration concerning the date Plaintiff and Chadwick's cell was searched and that error was not discovered until September 2013 at which time Plaintiff was given the documents. Second, with respect to Exhibit 20, the search logs, we find that the late production of this document to Plaintiff is harmless; again, there is no factual dispute between the parties as to who was Plaintiff's cell mate at the time of each search. Nor is there is a factual dispute as to whether and when Plaintiff's cell was searched and what, if

anything, was found. Finally, with respect to Exhibit 23, the duty rosters, we find that the late production of this document to Plaintiff, which was submitted to support the DOC Defendants' position in their Motion for Partial Summary Judgment that Defendant McConnell was not working on February 14, 2010 or March 8, 2010 and therefore could not have retaliated against Plaintiff on those days, was harmless. We so find because, as Magistrate Judge Baxter concluded in her R&R: "whether McConnell was working on the dates of these two cell searches is of no moment to the analysis at hand. McConnell's absence from facility on any given day does not demonstrate that he did not orchestrate a campaign of retaliation against Plaintiff by directing others to conduct the cell searches on these dates." R&R, p. 32.

Having concluded that the DOC Defendants' late production of each of the four documents was either substantially justified and/or harmless, Plaintiff's Motion for Sanctions is denied.

An appropriate Order follows:

ORDER

AND NOW, this __19tu__th day of March, 2015, it is HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Sanction [ECF #128] is DENIED.

Maurice B. Cohill, Jr.
Senior District Court Judge

7