IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MARSHALL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 10-169E |
| RAYMOND J. SOBINA et al, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On October 2, 2013, Defendants Raymond Sobina, William McConnell, Scott Breckenridge, Col. Hewitt and Ralph Lucas ("the DOC Defendants") filed a partial motion for summary judgment [ECF# 112] and on October 8, 2013, Defendants Daniel S. Telega, Tammy Mowery, Dr. Mark Baker and Dr. Valerie Gilreath ("the Medical Defendants") filed a motion for summary judgment [ECF#116]. On June 2, 2014, Magistrate Judge Baxter issued a Report and Recommendation ("R&R") [ECF#134] in which she recommended that the Medical Defendants' Motion for Summary Judgment be granted in part and denied in part as follows:

- Granted on the basis of failure to exhaust as to the claims against Baker and Gilreath;

- Denied on the basis of failure to exhaust as to the claims against Mow[e]ry and Telega;

- Denied on the basis of failure to show deliberate indifference to a serious medical need.

Defendants Baker and Gilreath should be dismissed as parties to this action.

R&R, p. 1. Magistrate Judge further recommended that the DOC Defendants' Motion for Summary Judgment be granted in part and denied in part as follows:

- Denied on the basis of failure to exhaust;

- Granted with regard to the deliberate indifference claim against Defendant Lucas based upon delay in medical treatment;

- Granted as to the retaliation claims based on Misconduct B144269 for Possession of Contraband and the concomitant cell search of February 2nd, and Misconduct A913573 for Refusal to Obey an Order;

- Denied as to the retaliation claims based on the termination of employment and the cell searches of February 10th, February 14th and March 8th.

Defendant Lucas should be dismissed as a party to this action.

Id. Thereafter, on June 19, 2014, Daniel Telega and Tammy Mowery[1] (the "Medical Defendants") filed Objections to Magistrate Judge Baxter's R&R [ECF #138] and on June 24, 2014, Plaintiff filed objections to the R&R [ECF #140]. For the reasons which follow, the Court will adopt the R&R of the Magistrate Judge, as supplemented, as the Opinion of the Court.

**I. Legal Analysis.**

    **A. Standard of Review.**

Rule 72(b)(3) of the Federal Rules of Civil Procedure provides: "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

---

[1] Tammy Mowery is deceased; her estate has been substituted aa a defendant in this action.

**B. Objections to Report and Recommendation filed by the Medical Defendants Daniel S. Telega and Tammy Mowery.**

With this mandate in mind, we turn first to the Medical Defendants' Objections to the R&R. Plaintiff's claims against these Defendants are based upon Plaintiff's contention that he received inadequate medical care following an assault by Defendant Hewitt, a guard at SCI-Albion, on or about January 28, 2010. Their first objection is that Magistrate Judge Baxter had ruled in an earlier Report and Recommendation that summary judgment should be granted as to Plaintiff's claims against Defendant Mowrey and therefore, because there was neither new evidence nor new argument introduced, summary judgment again should be granted in their favor on said claims.

As an initial matter, the motions, responses thereto, and evidence introduced by the parties in this round of summary judgment motions was not identical to those submitted by the parties in the first round of summary judgment motions. More importantly, because the earlier R&R was never adopted by this Court as its Opinion, the legal analyses and holdings contained therein are not "the law of the case" and Magistrate Judge Baxter was, and this Court is, free to examine the "new" motions for summary judgment and supporting evidence, and Plaintiff's oppositions thereto and supporting evidence, without consideration of any analyses or conclusions contained in the earlier R&R.

The Medical Defendants next contend that Magistrate Judge Baxter erred when she determined that these defendants failed to adequately prove that Plaintiff did not timely exhaust his administrative remedies as to his claim that Ms. Mowery violated his rights on February 11, 2010 when she failed to provide him needed medical treatment, see R&R, pp. 16-17. Defendants' Objections, pp. 3-4.

3

We agree with Magistrate Judge Baxter's analysis of this issue. The Medical Defendants' argument essentially is that because Ms. Overton denied grievance #08385 on March 19, 2010, and thereafter, on April 6, 2010, Ms. Adams noted on April 6, 2010, in response to Plaintiff's March 31, 2010 "Inmate Request to Staff Member," that "[i]t appears you [Plaintiff] are continually trying to receive free copies. The responses are distributed when they are completed," that the only conclusion can be "that the DOC responded in a timely manner to the grievance and to each Request to Staff Member submitted by Plaintiff. The administrative process was available to Mr. Marshall. However, he did not avail himself of that process by failing to appeal grievance #308385 in a timely manner." Id. at p. 4. The problem with this contention is that at the summary judgment stage, it is the Defendants' burden to establish that Plaintiff failed to exhaust his administrative remedies and in doing so, we are to view all evidence of record in a light most favorable to the non-moving party, here the Plaintiff. Under this standard of review, viewing the evidence of record in a light most favorable to Plaintiff, the evidence presented by Defendants does not establish that Plaintiff ever received Ms. Overton's decision and therefore, they have not met their burden of establishing that Plaintiff failed to exhaust his administrative remedies as to grievance #308385.

The Medical Defendants further argue that Magistrate Judge Baxter erred when she denied summary judgment with respect to Plaintiff's claim of deliberate indifference to Plaintiff's serious medical need claims against Defendant Telega and Mowery based upon their lack of medical treatment of Plaintiff on January 28, 2010 (Telega) and February 1 and 11 (Mowery), see R&R at pp. 20-21, because "Plaintiff has failed to produce any evidence, other than his own general conclusory statements, to substantiate he has a serious medical condition; and . . . Plaintiff has failed to provide any evidence to support his contention that Defendants

4

knew of his serious medical condition and failed to provide treatment for that condition."
Defendants' Objections, p. 2.

On these issues, Magistrate Judge Baxter recommended: "Summary judgment should be denied in this regard because there are disputed material issues of fact as to whether Plaintiff's condition rose to the level of a serious medical need and whether Telega's actions on January 28th and Mow[e]ry's actions on February 1st and 11th constituted deliberate indifference towards that need." R&R, p. 20. In support of her conclusion, the magistrate judge cited to the Affidavits of Defendants Telega and Gilreath and of Plaintiff and stated:

> Although Plaintiff's medical records are part of the evidentiary record before this Court, Plaintiff contradicts almost every notation through his own affidavits and contends that these allegedly false notations are part of the cover-up of the assault by Hewitt. Because this Court cannot weigh the credibility of evidence on a summary judgment analysis and because the Court must draw inferences in the light most favorable to the non-moving party, the motion for summary judgment should be denied as to this claim.

Id. at p. 21 (citation omitted).

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that it so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Defendant Telega stated the following in his Affidavit with respect to Plaintiff's alleged "serious medical need" and his treatment of Plaintiff:

> 2. On January 28, 2010, I saw James Marshall, who had subjective complaints that he was pushed against the wall during a pat search by a C.O. Upon examination, Mr. Marshall had no bruising, erythema or asymmetry. Marshall had no abrasions, but was very muscular. He had decreased active range of motion with formal testing.

5

> 3. I casually observed Mr. Marshall with dressing and replacing his clothes and he had no deficits. He refused passive range of motion by resisting with his right arm, which revealed good muscle strength of 5/5.
>
> 4. My assessment at that time was that Mr. Marshall's subjective complaints were inconsistent with my physical, objective findings. It was my professional opinion that no treatment was necessary at that time.

Telega February 7, 2013 Affidavit, ¶¶ 2-4.

To the contrary, in his Affidavit, Plaintiff states the following relevant facts about his alleged "serious medical need" and treatment of it by Defendants Telega and Mowery:

> 14. On 1/28/10 the Plaintiff had bruising and swelling at the area of his right sternoclavicular joint.
>
> 15. On 1/28/10 PA-C Telega did not observe the Plaintiff dressing or replacing any clothing. The Plaintiff was forced to get dressed in the hallway outside of Telega office.
>
> 16. During the Plaintiff[']s examination with PA-C Telega on 1/28/10, I did not refuse range of motion test. Rather, the Plaintiff attempted each requested movement but was unable to complete it.
>
> 17. Mr. Telega did curse at me, he called me an asshole and told me to get the fuck out [of] his office and get dressed in the hall way. At no time did I disrespect or become argumentative.
>
> 18. On 2/1/10 at the visit with PA-C Mow[e]ry I was not examined by Ms. Mow[e]ry, she did not perform no examin[a]tion or any range of motion test. I had extreme difficulty, and discomfort with removing and replacing my clothing to take pictures of my injuries, not for an examination by PA-C Mow[e]ry.
>
> 19. On 2/1/10 at my visit with Ms. Mow[e]ry I had bruising and swelling in the area of my sternoclavicular joint . . . . and extreme inability to move my right are without extreme pain. I did show PA-C Mow[e]ry the deformity, the bony protrusion at the center of my chest where the swelling was at during the pictures being taken.
>
> 20. At my visit on 2/11/10 with Pa-C Mow[e]ry I was not physically examined nor did I remove any clothing at this visit. PA-C Mow[e]ry did not observe me removing any clothing.

6

> 21. At both visits on 2/1/10 and /11/10 PA-C Mow[e]ry told me she was not going to treat me and second guess another Physician Assistant (PA-C Telega).
>
> . . .
>
> 25. I was seen on 6/10/10 by Dr. Gilreath, he told me that the Three Phase Bone Scan revealed that my right clavicle and sternum was fractured.

Plaintiff's March 26, 2013 Affidavit, ¶¶ 14-21 and 25.

While "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgement," reviewing Plaintiff's March 26, 2013 Affidavit, we cannot state that this Affidavit, while certainly self-serving, is conclusory. As such, based upon the above statements made in Plaintiff's Affidavit, we agree with Magistrate Judge Baxter that there are genuine issues of material fact with respect to whether on the dates Plaintiff went to see Defendants Telega and Mowery, both of whom are physician assistants at SCI-Albion, Plaintiff had a "serious medical need." We also agree that based upon the above statements in Plaintiff's Affidavit, there is a genuine issue of material fact as to whether these defendants, knowing about said serious medical need, then failed to provide any treatment for the injury. These conclusions preclude the granting of summary judgment as to Plaintiff's claim that Defendants Telega and Mowery were deliberately indifferent to his serious medical need.

**C. Objections to Report and Recommendation filed by the Plaintiff.**

**1. Recommended dismissal of claims against Defendants Drs. Baker and Gilreath based upon Plaintiff's failure to exhaust administrative remedies.**

Magistrate Judge Baxter recommended that summary judgment be granted in favor of Drs. Gilreath and Baker: "[t]he record reflects that none of Plaintiff's grievances names or identifies either Gilreath or Baker. Plaintiff has provided no evidence to the contrary as he must in face of a well-supported motion for summary judgment. Accordingly, summary judgment

7

should be granted in their favor since the record demonstrates that Plaintiff has failed to exhaust his administrative remedies as to the claims against Gilreath and Baker." R&R, p. 15 (citations omitted).

Plaintiff objects to the "recommendation that summary judgment be granted in favor of defendants Drs. Baker and Gilr[e]ath for failure to exhaust this claim on the grounds that they were not named in an initial grievance" because "[b]oth Drs. Baker and Gilreath were aware of the fact the plaintiff complained continuously he was being denied treatment. In most instances they were personally involved and alert." Plaintiff's Objections, p. 3. See also Id. ("The plaintiff submitted these defendants were identified and mention[ed] throughout the plaintiff's appeals process, personally involved and directed to respond to the plaintiff's Medical concerns, as such it has not been demonstrated they do not fall within the compass of the plaintiff's claims.").

As explained by the appellate court in Diaz v. Palakovich, 448 Fed. Appx. 211 (3d Cir. 2011):

> The procedural default component to the [Prison Litigation Reform Act of 1995's] exhaustion requirement requires "'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'" DOC grievance procedures "supply the yardstick" to determine whether [the plaintiff-prisoner] procedurally defaulted his claim under the PLRA in failing to name the defendants individually in his grievances. We have interpreted substantially similar versions of the grievance system policy to require an inmate to identify specific individuals involved in the occurrences they grieve. DOC employees, however, may excuse such procedural defaults "by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." Indeed, we reiterate that " '[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.' "

Id. at *5 (internal citations omitted). With respect to Dr. Baker, he is never mentioned in Plaintiff's grievances. We further find that, contrary to Plaintiff's contentions, there is no

8

evidence of record from which it can be concluded that the actions of Dr. Baker were "fairly within the compass" of Plaintiff's grievance. See Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004) (where the grievances and the suit are about a larger-scale denial of adequate medical care, in which prison officials clearly knew a certain defendant was alleged to be implicated, plaintiff's failure to name that defendant in the grievance was excused and case against that defendant would not be dismissed for failure to exhaust administrative remedies).

With respect to Dr. Gilreath, while Dr. Gilreath is mentioned in the evidence of record relative to several of Plaintiff's grievances, even viewing this evidence in a light most favorable to Plaintiff, nothing is contained in these documents from which a reasonable trier of fact could conclude that Dr. Gilreath's treatment of Plaintiff was "fairly within the compass of the prisoner's grievance."

For these reasons, we agree with Magistrate Judge Baxter's recommendation that summary judgment should be granted in favor of Defendants Drs. Baker and Gilreath on Plaintiff's claims against them because Plaintiff failed to exhaust his administrative remedies with respect to his claims against them.

**2. Recommended dismissal of claim against Defendant Lucas for deliberate indifference to a serious medical need.**

Plaintiff also objects to the recommendation that summary judgment be granted with respect to Plaintiff's deliberate indifference claim against Defendant Lucas: "Defendant Lucas denied plaintiff access to Medical treatment for non-medical reasons. Participate with other[s] in concert to cover up evidence of assault, to delay, deny and intentionally interfere with the Plaintiff's obtaining treatment. The fact that, the delay may have only been more th[a]n an a hour states a claim. Plaintiff's Objections, p. 4.

9

Magistrate Judge Baxter recommended that summary judgment be granted in favor of Defendant Lucas on the basis that the evidence of record, even viewed in a light most favorable to Plaintiff (and assuming arguendo that when Plaintiff interacted with Defendant Lucas, Plaintiff's sternum and/or clavicle was broken), does not support a claim of deliberate indifference against Defendant Lucas. R&R, p. 25. Specifically, Magistrate Judge Baxter found that neither a short delay of less than two hours between the earliest time Plaintiff could have been denied medical treatment by Defendant Lucas and when he was finally seen by Defendant Telega, nor any hostility directed by Lucas towards Plaintiff, equates to a claim of deliberate indifference to a serious medical need. Id. at p. 26.

We agree with Magistrate Judge Baxter that even viewing the evidence of record in a light most favorable to Plaintiff, the evidence of record does not support a claim against Defendant Lucas for deliberate indifference to a serious medical need.

### 3. Recommended dismissal of part of Plaintiff's retaliation claim.

#### a. The February 2, 2010 misconduct and cell search.

In her R&R, Magistrate Judge Baxter found that four (4) of Plaintiff's retaliation claims against the DOC Defendants survived a failure to exhaust analysis: "1) the misconduct issued by Officer Fries on February 2, 2010 (B144269 for possession of contraband); 2) the misconduct issued by Breckenridge on February 13, 2010 (A913573 for refusal to obey an order); 3) Plaintiff's loss of employment in the food service department; and, 4) the four cell searches (between February 2nd and March 8th)." R&R, p. 27. She then concluded:

> While the January 29th grievance and the February 2nd misconduct and cell search are extremely "temporally suggestive," Defendants have provided evidence that McConnell could not have known about the January 29th grievance until February 4th, at the earliest. This evidence, unchallenged by contradictory evidence, means that there is no causal connection between the January 29th grievance and the February 2nd misconduct and cell search. Accordingly, Plaintiff

10

has failed to state a *prima facie* case of retaliation based upon the February 2nd misconduct and cell search.

Id. at p. 30. She therefore recommended that summary judgement be granted with respect to Plaintiff's claim that Defendant McConnell retaliated against Plaintiff on February 2, 2010 for Plaintiff filing the January 29, 2010 grievance by having Officer Fries issue Plaintiff a misconduct and by ordering Plaintiff's cell to be searched.

The Grievance Coordinator, Melinda Adams, stated in her Declaration that Grievance #306245, while dated January 29, 2010, was not received by, until February 3, 2010. See February 6, 2013 Declaration of Melinda Adams, ¶ 3. Ms. Adams further explained that she did not forward the grievance to Defendant McConnell until February 3, 2010 and that he would not have received it until at least February 4, 2010. Id. at ¶5. See also February 7, 2013 Declaration of William McConnell, ¶6. Plaintiff has not presented any evidence to the contrary.

Accordingly, even viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could not conclude that Defendant McConnell retaliated against Plaintiff on February 2, 2010 for Plaintiff filing Grievance #306245 when the grievance was not received by Ms. Adams, the Grievance Coordinator, until February 3, 2010. Therefore, Magistrate Judge Baxter correctly concluded that summary judgement should be granted as to Plaintiff's retaliation claim related to the misconduct issued by Officer Fries on February 2, 2010 (B144269) for possession of contraband and the search of his cell on February 2, 2010 to the extent that it is premised upon the alleged retaliation by Defendant McConnell being in reaction to Plaintiff filing Grievance #306245.

But this is not the end of the analysis of Plaintiff's retaliation claim against Defendant McConnell related to the events of February 2, 2010. In both Plaintiff's Memorandum in Opposition to Medical Defendants Summary Judgment Motion and DOC Defendants Partial

11

Summary Judgement Motion and in his Objections to the R&R, we read Plaintiff's position to be that Defendant McConnell's retaliation on February 2, 2010 was in response not only to Plaintiff filing Grievance #306245, but also in response to Plaintiff complaining on January 28, 2010 and February 1, 2010 that Defendant Hewitt had assaulted him and requesting medical treatment. See Plaintiff's Opposition Memorandum, p. 30 ("[t]he Plaintiff submits that, immediately after reporting Officer Hewitt assaulting him on 1/28/10 and requesting medical treatment, submitting the grievance alleging abuse on 1/29/10 which was taken out to be delivered this same date, and the filing a complaint with the Bureau of Health Care Service. The plaintiff was subjected to continued and ongoing acts of harassment and retaliation. The action of the plaintiff's reporting staff abuse and requesting medical treatment, filing grievances and civil lawsuits, are all constitutionally protected activities."); Id. at p. 32 ("the plaintiff reported his injuries from abuse on 2/1/10 and specifically requested photographs of his injuries. A officer from the security office took these photo's. Lt. McConnell evasiveness of knowledge of the plaintiff's report of abuse allegation by the time of the incident of 2/2/10 fails and must be rejected."); Plaintiff's Objections, pp. 5-6 ("The plaintiff has demonstrated a suggestive temporal proximity between his insistence on first and Eighth Amendment rights and the 2/2/10 #B144269 misconduct, cell and strip search. The plaintiff has presented evidence, that he reported his abuse allegation 1/28/10 to prison official and medical personnel. He also, presented to medical personnel his claim of abuse and requested treatment 2/1/10.") (internal citation omitted). As such, in light of Plaintiff's *pro se* status, we find that it is best to err on the side of caution and read Plaintiff's retaliation claim based upon the events of February 2, 2010 to include the contention that these events were done in retaliation for Plaintiff complaining prior to February 2, 2010 about Defendant Hewitt assaulting him and about his not receiving proper medical treatment.

12

With that said, the DOC Defendants had also argued in their motion for summary judgment that summary judgment should be granted in their favor with respect to Plaintiff's retaliation claim related to the February 2, 2010 Misconduct because they had established that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. It had not been necessary for the magistrate judge to address the argument in her R&R, but in light of our decision to read Plaintiff's retaliation claim based upon the February 2, 2010 Misconduct as being in retaliation for Plaintiff complaining prior to February 2, 2010 about Defendant Hewitt assaulting him and about his not receiving proper medical treatment, we must address this contention by the DOC Defendants.

As explained by Magistrate Judge Baxter in the R&R, it is well established that:

> [f]ollowing the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff was not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.
>
> . . .
>
> Retaliatory discipline claims fail when there is "some evidence" supporting a guilty finding for the charges. Nifas v. Beard, 374 Fed.App'x 241, 244 (3d Cir. 2010) citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (explaining that a finding that the inmate actually committed the misconduct essentially "checkmates" his retaliation claim)."

R&R, pp. 30-31.

Applying this law to the evidence submitted by the DOC Defendants with respect to the B144269 Misconduct, the evidence of record shows that the Misconduct was issued by Officer Fies on February 2, 2010. See Exhibit 6 to Appendix to DOC Defendants' Motion for Partial

13

Summary Judgment. Further, on February 11, 2010, the Unit Manager completed a Disciplinary Hearing Report in which she noted that the charge was for "#36 possession of contraband," that the "sanction" was to "revoke contraband," but that Plaintiff could "remain at job in dietary, unless dietary staff wish to have him removed;" she also checked the boxes that stated: "[t]he inmate has heard the decision and has been told the reason for it and what will happen," "[t]he circumstances of the charge have been read and fully explained to the inmate," [t]he opportunity to have the inmate's version reported as part of the record was given," and "[t]he inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review." Id. Finally, on February 11, 2010, the Unit Manager completed an Informal Resolution Action Form which indicated that the contraband was revoked and that Plaintiff was not to be removed from his job unless dietary wants him removed. Id. We find that by submitting this evidence the DOC Defendants have met their burden of demonstrating, by a preponderance of the evidence, that their actions would have been the same, i.e. they have come forward with "some evidence" that the same decision would have been made with respect to the events that occurred on February 2, 2010 for a "reason reasonably related to a legitimate penological interest." Accordingly, summary judgment shall be granted in favor of the DOC Defendants as to Plaintiff's retaliation claim to the extent that it is based upon the February 2, 2010 Misconduct being given to him in retaliation for his complaining prior to February 2, 2010 about Defendant Hewitt assaulting him and about his not receiving proper medical treatment.

### b. The February 13, 2010 Misconduct.

Plaintiff's final objection to the R&R is that the magistrate judge erred when she recommended that summary judgment be granted as to Plaintiff's retaliation claim based upon his being given a Misconduct (A913573) on February 13, 2010 by Defendant Breckenridge, an employee of the prison's food service department, for failure to obey an order. Plaintiff's Objection, pp. 6-7. The magistrate judge recommended that summary judgment be granted in support of the DOC Defendants to the extent that Plaintiff's retaliation claim was based upon Defendant Breckenridge issuing him Misconduct A913573:

> Retaliatory discipline claims fail when there is "some evidence" supporting a guilty finding for the charges.
>
> Here, the Hearing Examiner issued a Reprimand and Warning to Plaintiff on this misconduct. This determination "checkmates" Plaintiff's retaliation claim [as to Misconduct A913573] as it demonstrates that Defendants had a legitimate penological interest in issuing the misconduct.

R&R, p. 31 (internal citations omitted).

With respect to the issue of whether the DOC Defendants have met their burden of proving that this Misconduct (A913573) would have been imposed on Plaintiff notwithstanding any motivation to retaliate, the evidence of record shows that the Misconduct was issued by Defendant Breckenridge on February 13, 2010 and that on February 23, 2010 the Unit Manager completed an Informal Resolution Action Form which indicated that Plaintiff was reprimanded and warned and could return to work. See Exhibit 8 to Appendix to DOC Defendants' Motion for Partial Summary Judgment. As we found with Misconduct B144269 that was issued on February 2, 2010, we find that this evidence satisfies the DOC Defendant's burden of demonstrating, by a preponderance of the evidence, that their actions would have been the same even if Plaintiff had not engaged in constitutionally protected activities, i.e. they have come

15

forward with "some evidence" that the same decision would have been made with respect to the events that occurred on February 13, 2010 for a "reason reasonably related to a legitimate penological interest."

Accordingly, Magistrate Judge Baxter did not err when she concluded that summary judgment should be granted in favor of the DOC Defendants as to Plaintiff's retaliation claim related to the Misconduct (A913573) that he was given on February 13, 2010 by Defendant Breckenridge.

## II. Conclusion.

Accordingly, after de novo review of the pleadings and documents in the case, together with the Report and Recommendation from Magistrate Judge Baxter and the parties' Objections to the R&R, the following Order is entered:

### ORDER

AND NOW, this 31st day of March, 2015 it is HEREBY ORDERED, ADJUDGED AND DECREED that the Magistrate Judge's Report and Recommendation [ECF #134], dated June 2, 2014, is adopted as the Opinion of the Court with respect to the Medical Defendants' Motion for Summary Judgment.

It is further hereby ORDERED, ADJUDGED, AND DECREED that the Medical Defendants' Motion for Summary Judgment [ECF#134] is GRANTED as to Defendants Dr. Mark Baker and Dr. Valerie Gilreath and DENIED as to Defendants Daniel S. Telega and Tammy Mowery.

It is further hereby ORDERED, ADJUDGED, AND DECREED that the Magistrate Judge's Report and Recommendation [ECF #134], dated June 2, 2014, is adopted as the Opinion

of the Court with respect to the DOC Defendants' Motion for Partial Summary Judgment as supplemented by the Memorandum Opinion accompanying this Order.

It is further hereby ORDERED, ADJUDGED, AND DECREED that the DOC Defendants' Motion for Partial Summary Judgment is GRANTED with regard to the Plaintiff's deliberate indifference claim against Defendant Lucas based upon delay in medical treatment and is GRANTED as to the retaliation claims based on Misconduct B144269 for Possession of Contraband and the concomitant cell search of February 2nd, and Misconduct A913573 for Refusal to Obey an Order; and otherwise is DENIED.

It is further hereby ORDERED, ADJUDGED, AND DECREED that the Defendants Dr. Mark Baker, Dr. Valerie Gilreath, and Ralph Lucas shall be dismissed as parties to this action.

A status conference with respect to this matter will be held on April 16, 2015 at 11:00 A.M. in Judge Cohill's chambers, 8170 U.S Courthouse, 700 Grant Street, Pittsburgh, PA 15219. Plaintiff shall participate in the status conference by telephone; defense counsel shall make the necessary arrangements for ensuring Plaintiff's participation in the status conference.

Maurice B. Cohill, Jr.
Senior U.S. District Court Judge